# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2019

Lyle W. Cayce
Clerk

No. 18-30029

ST. BERNARD PARISH, Through the St. Bernard Parish Government,

>    Plaintiff–Appellee,

v.

LAFARGE NORTH AMERICA, INCORPORATED,

>    Defendant–Appellee,

v.

RICHARD T. SEYMOUR; LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.,

>    Movants–Appellants.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and DENNIS and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

When Hurricane Katrina struck in 2005, a barge moored by Lafarge wound up at large. According to New Orleans residents then represented by Richard T. Seymour, the breakaway barge hurtled through a floodwall, unleashing catastrophic flooding in the Lower 9th Ward before finally coming to rest atop several homes and a yellow school bus. (It remains disputed whether the barge caused the breach or surfed through it after the floodwall gave way.)

No. 18-30029

Seymour withdrew from the Barge Litigation in 2011. But when it settled several years later, he moved to intervene in this related case to pursue his fees and expenses. We agree with the district court that Seymour's intervention motion was untimely. As to intervention of right, we AFFIRM the district court's order. As to permissive intervention, we DISMISS Seymour's appeal for lack of jurisdiction.

## I. BACKGROUND

### A.    Factual

In August 2005, Hurricane Katrina, the most destructive natural disaster in United States history, inflicted cataclysmic damage on New Orleans. According to many residents of the Lower 9th Ward, a predominantly African-American neighborhood bordering the Industrial Canal, the damage was worsened by a barge that broke free and allided with a floodwall before crashing into the residential streets, unleashing a surge of water that ripped homes from their foundations before scattering them in splinters.[1] The residents alleged that the barge had been improperly moored at a facility owned by Lafarge North America, Inc. The district court consolidated many of the resulting cases into the Barge Litigation.

Appellants Richard T. Seymour and the Law Office of Richard T. Seymour, P.L.L.C. represented plaintiffs in the Barge Litigation. Seymour performed significant work in the consolidated cases, as noted in the order granting his motion to withdraw. This work contributed to multiple cases including, per Seymour, this one. But Seymour never represented a party in this case because this action by St. Bernard Parish against Lafarge was not consolidated into the Barge Litigation.

---

[1] *See generally St. Bernard Par. v. Lafarge N. Am., Inc.*, 550 F. App'x 184 (5th Cir. 2013) (earlier appeal of summary-judgment decision).

**B.     Procedural**

In 2011 Seymour withdrew from the Barge Litigation because of a fee dispute with Baker Sanders, LLC, a firm that now represents the Parish. In granting Seymour's motion to withdraw, the district court explicitly recognized his potential claim to fees in the Barge Litigation. The Parish filed this case on August 23, 2011, the same day Seymour withdrew.

About six years later, in 2017, the Parish and Lafarge settled this case. On July 20 Parish counsel called Seymour to tell him that the parties had reached a settlement. The attorney told Seymour that at most he would be compensated for only some of his expenses. On July 23 Seymour served Baker Sanders with a Notice of Lien for fees and expenses in this case. Undaunted, the Parish and Lafarge filed a joint stipulation of dismissal with prejudice.

Seymour, intending to pursue his claim for fees in the district court, moved on August 9 to appear *pro hac vice*. The district court denied this motion without prejudice because, before intervening in the case, Seymour would not have been representing anyone. So Seymour moved to intervene on September 17. Meanwhile, a Baker Sanders attorney had filed an interpleader action in New York state court that named Seymour as a defendant. The interpleader action concerned the same funds that Seymour sought to pursue via intervention.

The district court denied Seymour's motion to intervene as untimely. Seymour appealed.

3

No. 18-30029

## II. JURISDICTION AND STANDARD OF REVIEW

### A.    Jurisdiction

The district court had jurisdiction based on federal question;[2] diversity;[3] and the Multiparty, Multiforum Trial Jurisdiction Act of 2002.[4]

We have jurisdiction under 28 U.S.C. § 1291 to review the denial of the motion to intervene of right.[5] And we have "provisional jurisdiction" to review the denial of permissive intervention.[6] This means that "[i]f the district court's denial of permissive intervention does not constitute an abuse of discretion, we must dismiss the appeal for lack of jurisdiction."[7]

### B.    Standard of Review

"A ruling denying intervention of right is reviewed de novo."[8] But the timeliness of an intervention motion is reviewed for abuse of discretion, so long as the district court gave reasons for its determination.[9]

"Denial of permissive intervention, on the other hand, is reviewed for clear abuse of discretion."[10] "Under this standard, the Court will reverse a district court decision only under extraordinary circumstances."[11]

## III. DISCUSSION

Federal Rule of Civil Procedure 24 covers two types of intervention, one mandatory ("the court must permit")[12] and the other permissive ("the court

---

[2] 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1332.

[4] 28 U.S.C. § 1369.

[5] *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016).

[6] *Id.* (quoting *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (*en banc*)).

[7] *Id.* (quoting *Edwards*, 78 F.3d at 992).

[8] *Edwards*, 78 F.3d at 995.

[9] *Sommers*, 835 F.3d at 513; *Edwards*, 78 F.3d at 1000.

[10] *Edwards*, 78 F.3d at 995.

[11] *Id.* (quoting *Cajun Elec. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991)).

[12] FED. R. CIV. P. 24(a).

may permit").[13] While the provisions cover different situations, both prize punctuality, beginning with the same three words: "On timely motion . . . ."[14]

## A.     Intervention of Right

Rule 24(a)(2) governs intervention of right based on an interest in the action. We have distilled the rule into four elements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[15]

"Failure to satisfy any one requirement precludes intervention of right."[16] Timeliness was the only element the district court decided and is the only one disputed here. In evaluating timeliness, a district court should consider four factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.[17]

---

[13] FED. R. CIV. P. 24(b).

[14] FED. R. CIV. P. 24(a); FED. R. CIV. P. 24(b).

[15] *Sommers*, 835 F.3d at 512 (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)).

[16] *Edwards*, 78 F.3d at 999 (citation omitted).

[17] *Sommers*, 835 F.3d at 512–13 (quoting *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001)).

### 1. *Length of Time Elapsed*

Seymour says he moved to intervene less than two months after receiving notice that his claim would not be paid. But the relevant starting point is "not when he knew or should have known that his interests would be adversely affected but, instead, when he knew that he had an interest in the case."[18] Here, Seymour knew that he had an interest in the case when he withdrew in 2011, six years before he moved to intervene.

Seymour counters that the "timeliness clock" does not begin until a movant knows or should know that his interest is no longer represented by an existing party.[19] But in 2011 he should have also known that no remaining party represented his interest. Although a plaintiff adequately represents his attorney's interest during the attorney-client relationship,[20] no party in a case represents the interest of a discharged attorney.[21] And in *Keith v. St. George Packing Co.* and *Gaines v. Dixie Carriers, Inc.*, discharged attorneys were permitted to intervene when their motions came within a year of being discharged.[22] Here, much more time lapsed—six years from withdrawal to intervention. So the first timeliness factor weighs against permitting intervention.

### 2. *Prejudice to Existing Parties*

Seymour says his intervention will not prejudice other parties because it will not cause burdensome additional proceedings. He says the Parish cannot

---

[18] *Id.* at 513.

[19] *See Edwards*, 78 F.3d at 1000.

[20] *Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 556 (5th Cir. 1992) ("His interest is identical to [the client's] until the agency relationship is broken.").

[21] *See Keith v. St. George Packing Co.*, 806 F.2d 525, 526 (5th Cir. 1986) ("[N]either party to the pending action is interested in representing [the attorney's] interests."); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970) ("Neither of the existing parties is concerned with protecting the appellant's interest."); *see also Gilbert v. Johnson*, 601 F.2d 761, 767 (5th Cir. 1979) (holding similar facts indistinguishable from *Gaines*).

[22] *Keith*, 806 F.2d at 525; *Gaines*, 434 F.2d at 54.

identify anything it would have done differently had Seymour been a party all along. And his fee is to be taken from the existing settlement pool, not from a renewed settlement negotiation.

Seymour is correct that opening a fee dispute between the plaintiff, its current counsel, and former counsel would not necessarily relitigate the underlying case. But it would at least hold up the distribution of settlement funds, which could have been avoided had Seymour intervened when his interest was no longer represented. So the second timeliness factor is neutral.

### 3. Prejudice to Seymour

Seymour says he will be prejudiced absent intervention because it will be difficult to pursue his claim elsewhere. He has numerous objections to the New York interpleader action, including lack of personal jurisdiction. And he says that a federal interpleader action is unavailable. But this does not rule out other possibilities, such as a state-law action against the Parish or Baker Sanders to recover for his services.[23] At oral argument Seymour suggested that he preferred not to bring a separate action because it would be difficult to obtain discovery of a confidential settlement agreement.[24] But discovery of confidential settlement agreements is generally available under an appropriate protective order.[25] So the third timeliness factor weighs against permitting intervention.

---

[23] *See, e.g., Gilbert*, 601 F.2d at 767 (Rubin, J., specially concurring) (stating that under Georgia law the attorney "may, however, if discharged from the case by his client, bring an action under quantum meruit for the reasonable value of services rendered").

[24] Seymour cites *Ford*, 242 F.3d at 240, for the proposition that the presence of a "confidentiality order" is a consideration in granting or denying intervention. In *Ford* we granted a newspaper's motion to intervene to challenge the confidentiality of a settlement. 242 F.3d at 241. But *Ford* did not address the discoverability of a confidential settlement agreement in a separate private dispute.

[25] *E.g., Cleveland Const. Inc. v. Whitehouse Hotel Ltd. P'ship*, No. Civ.A. 01-2666, 2004 WL 385052, at *1–2 (E.D. La. Feb. 25, 2004); *Perez v. State Indus., Inc.*, 578 So. 2d 1018, 1020 (La. Ct. App. 1991).

### 4. *"Unusual Circumstances"*

Finally, Seymour says that the Parish's or Baker Sanders's attempt to withhold his fees, including filing a questionable interpleader action, are special circumstances that favor intervention. Another special circumstance, he contends: the difficulty of intervening in the Barge Litigation as it stood in 2011—that is, in multiple fragmented cases.

The Parish, for its part, cites precedent that moving to intervene after a case is dismissed weighs against timeliness.[26] (We note, though, that the dismissal did not deprive the district court of jurisdiction to grant intervention or to grant the ultimate relief sought by Seymour.[27]) Considering all of this, the fourth factor is neutral.

\*     \*     \*

Viewing the four timeliness factors together, the district court did not abuse its discretion in concluding that Seymour's motion to intervene came too late.

### B.     Permissive Intervention

Like intervention of right, permissive intervention must be timely.[28] As Seymour's motion was untimely, no further analysis is needed.[29] The district court did not clearly abuse its discretion in denying permissive intervention, and this portion of Seymour's appeal is dismissed for lack of jurisdiction.[30]

---

[26] *See Sommers*, 835 F.3d at 513 ("Though the appellees are incorrect in suggesting that intervention is always improper after a case has been dismissed, they are accurate in asserting that it is a factor weighing against timeliness.").

[27] *See id.*; *United States v. Transocean Air Lines, Inc.*, 356 F.2d 702, 705 (5th Cir. 1966) ("[A] perfected charging lien of attorneys cannot be defeated by a dismissal by stipulation under Rule 41.").

[28] FED. R. CIV. P. 24(b).

[29] *See, e.g.*, *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996) (denying intervention of right and dismissing permissive intervention based on timeliness).

[30] *See Sommers*, 835 F.3d at 512.

No. 18-30029

## IV. CONCLUSION

We AFFIRM the district court's decision as to intervention of right and DISMISS Seymour's appeal for lack of jurisdiction as to permissive intervention.