Dr. Joseph **GILBERT**, Jr., Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 117–83C.

United States Claims Court.

July 21, 1986.

Mark J. Kadish, Atlanta, Ga., attorney of record for plaintiff; Alan Baverman, Atlanta, Ga., of counsel.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### I. *Introduction*

This civilian pay case presents a claim for back pay by the plaintiff, Dr. Joseph Gilbert, arising out of the Veterans Administration's (VA) alleged failure in 1974 to formally effect his then approved transfer from the Atlanta VA hospital (A–VAH) to the Birmingham VAH. In essence, plaintiff seeks the benefit from a position that he has never occupied nor performed any services with respect thereto, but to which he claims the VA should have acted in 1974 to formally appoint him. Plaintiff also seeks reinstatement with the A–VAH following a decision of a VA Professional Standards Board separating him from VA service in 1981 for allegedly abandoning the position at Atlanta VAH from which he argues he should have been transferred in 1974. At the time of his separation in 1981, plaintiff held the position description of Physician, Outpatent Surgical Services, Atlanta VAH, to which he was assigned in February 1973.[1] Plaintiff challenges the 1981 board decision separating him for abandonment of said position as being arbitrary, capricious, and not supported by substantial evidence. Also relative to the 1981 board proceedings, plaintiff argues that the procedures followed by the board were flawed in that they did not accord him the

---

1. *See* Administrative Record (AR) at page 80.

requisite due process to which he was entitled pursuant to 38 U.S.C. § 4110 (1982) and applicable regulations. *See* DM & S Supp. MP–5, Part II, Ch. 8 (1964). Defendant has moved for summary judgment and plaintiff has cross-moved.

Defendant, in its motion for summary judgment, argues procedurally that plaintiff's claim in this court is barred on the grounds of (1) lack of subject matter jurisdiction because plaintiff has no basis for a monetary claim inasmuch as he was neither ready nor willing to perform the duties of either the 1973 physician's assignment to which he was then transferred, or the duties of the position to which the VA had *contemplated* transferring him in 1974 (which was never implemented); (2) *res judicata* because the validity of plaintiff's 1973 assigned position was an issue that plaintiff could have litigated in a pending 1976 action in the United States District Court for the Northern District of Georgia; and (3) the statute of limitations because the 1973 assignment which is the basis of plaintiff's claim was an event forming the predicate of a cause of action, if any, which accrued prior to six years before the date the plaintiff's lawsuit was initiated in this court, *i.e.*, March 4, 1983.[2] On the merits, defendant alleges that the decision of the 1981 Professional Standards Board which separated plaintiff was neither arbitrary nor capricious, and is supported by substantial evidence as indicated in the record of the Board's proceeding. In addition, defendant argues that pursuant to the applicable regulations, plaintiff was accorded all the due process to which he was entitled before the Professional Standards Board.

Having thoroughly reviewed the parties' respective positions, the administrative record, the parties' pleadings including attachments, and upon exhaustive oral arguments, we are constrained under applicable precedent to dismiss plaintiff's back pay claim. We are so compelled inasmuch as plaintiff was never duly appointed to the Birmingham position nor ready and willing to assume it; and, we are further compelled to dismiss plaintiff's reinstatement claim, based on jurisdictional grounds, for failure to state an actionable claim for monetary relief associated therewith.

II. *Background*

Plaintiff, a medical doctor, is a highly specialized cardio-thoracic surgeon. The record indicates that he has demonstrated notable achievement as both a heart surgeon and an academician. He has lectured world wide and is the author or co-author of some 40 publications in scientific journals. He is a member of the American College of Surgeons, the American Association for Thoracic and Cardiovascular Surgery, the American College of Cardiology, the Society for Vascular Surgery, the Society for Artificial Internal Organs, the American Association for the Advancement of Science, and the Southern Thoracic Surgical Association.

Plaintiff was appointed to his first position with the VA, Associate Chief of Staff for Research (ACOS), on April 18, 1966. This position was located at the VA's Atlanta hospital in Atlanta, Georgia (A–VAH). In conjunction with the A–VAH's on-going relationship with nearby Emory University School of Medicine, plaintiff was simultaneously awarded the position of Assistant Professor of Surgery at Emory. Plaintiff's primary duties as ACOS related to the administration of the hospital's research facility. However, said duties also carried the understanding that he would have patient care duties in his highly specialized field, cardio-thoracic surgery. In addition, while both parties agree that plaintiff was awarded additional compensation for his "patient care specialty qualifications," pursuant to 38 U.S.C. § 4108 (1982), it is clear that plaintiff was denied, over his protest, from ever being assigned to perform such patient care services as

---

**2.** As a technical matter, the March 4, 1983 date represents the date the record in this case was transferred to this court from the U.S. District Court for the Northern District of Georgia.

Plaintiff filed his amended complaint, in order to conform to the requirements of this court, on April 1, 1983.

ACOS.[3] According to plaintiff, "[t]his exclusion (dating from 1966) of the Plaintiff from patient care duties at A–VAH precipitated the dispute from which litigation sprang."[4]

Despite his highly regarded specialized professional skills, however, from the beginning, the administrative record indicates that Dr. Gilbert's personality was often cast by his peers in less than positive terms. For example, in his first annual "Proficiency Report" dated May 22, 1967, i.e., the narrative of the rating official, Dr. Julian A. Jarman, Chief of Staff, relates that:

Dr. Gilbert is an extremely well informed surgeon and possesses very high moral and professional standards. * * * He is somewhat cynical, and at times arouses antagonism in his associates and in some superiors. He is probably aware of this, but would not think it the defect in interpersonal relationship [sic] that it is.[5]

That 1967 report, covering a 13-month observation period by Dr. Jarman, rated plaintiff numerically the maximum "8" in all grading categories (integrity; dependability; teaching ability; research ability; decision willingness) except "emotional stability" in which a score of "7" was assigned; and "interpersonal relations" in which a score of "6" was assigned. Out of a total of 88 points, Dr. Gilbert received an 86.5.[6]

Very similar remarks and numerical ratings, with an overall score of 83.5, appear on plaintiff's Proficiency Report for the annual period ending April 18, 1968.[7] There, the same rating official, Dr. Jarman, after a 32-month cumulative observation period, relates that:

Dr. Gilbert is extremely knowledgeable in the field of cardiac surgery and physiology. He is dedicated to his mission—

an untiring worker with tremendous drive—sometimes impatient with those who are less dedicated and this has not always stimulated the best in communications.[8]

Slightly, but not significantly, off mark is the 1969 annual report yielding a 79 point total score.[9] Probative individual ratings, based on Dr. Jarman's now 43-month cumulative review, were at "5" for emotional stability; "6" for interpersonal relations; and "6" for teaching ability. As for the narrative, similarly high praise is recorded for professional aptitude, with reservations relative to Dr. Gilbert's personality traits. Dr. Jarman writes in this connection that:

Dr. Gilbert continues as a dedicated and knowledgeable researcher and Associate Chief of Staff. His immediate staff look up to him as a deity and he apparently relates well to other good researchers. However, his score with the clinical and supporting staff in this hospital and the clinical staff at large in the University leaves much to be desired. The administration in Research is well organized and efficient. He has the knowledge, drive and intelligence to make an excellent Chief of Staff. At present, his intolerance and interpersonal relationship would not appear so fitted for such an assignment; nor would he be interested.[10]

The individual ratings and narratives of plaintiff's 1967, 1968, and 1969 Proficiency Reports, while they reflect what appears to have been a growing personality problem, collectively they still presented a marked contrast to the events of 1970. For example, Dr. Gilbert's 1970 annual Proficiency Report, with its overall average of 66.5, a rating of "3" for interpersonal relations, and a rating of "4" for emotional stability, marked a pronounced turning point from

---

3. Plaintiff's Amended Complaint at 3–4; Defendant's Answer at 2.

4. Complaint at 4. See also AR at 77.

5. AR at 466.

6. Id. at 465.

7. Id. at 463.

8. Id. at 464.

9. Id. at 461.

10. Id. at 462.

Dr. Gilbert's previously recorded performance ratings.[11] The 1970 Proficiency Report was prepared not by the same rater of the previous three years, but by a new Chief of Staff, Dr. Lewis Jones, who had observed Dr. Gilbert for only four and a half months. Dr. Jones' narrative, in harmony with his numerical ratings, is particularly biting, and lacks the usual personal praise for Dr. Gilbert's medical knowledge and ability. Dr. Jones writes:

> The Research Program at this hospital does not approach the quality that is possible. It is my impression that there are very few persons, if any, who would disagree with this estimate, including Dr. Gilbert himself. In my opinion, by far the most important reason for this failure has been Dr. Gilbert's inability to instill enthusiasm and his failure to encourage participation in research on the part of our staff. In fact, because of very poor interpersonal relations, Dr. Gilbert has discouraged persons from even visiting the research area of the hospital. Dr. Gilbert's unsatisfactory relations extend outside this hospital to involve persons within the Medical School including Chairmen of Departments.

> For the most part, information regarding research activities has been limited to the research area because Dr. Gilbert has secluded himself within his office and laboratory. Everyone agrees that Dr. Gilbert has a brilliant mind and an extraordinary ability to express his thoughts both verbally and in writing; however, his extreme egocentricity makes it almost impossible for him to sensibly perceive and interpret what others are thinking or saying. It seems to me that this is the real basis for his extremely poor administrative ability. He would probably function better as an independent investigator, relieved of administrative responsibilities. In my opinion, it is not possible at this point for Dr. Gilbert to reconstitute any worthwhile relations at this station which he may have had in the past or to generate new ones. I see no way that the research program at this station can profit from his continued presence.[12]

This rather dramatic shift in attitude toward plaintiff is explained by plaintiff as essentially based on a heightened "institutional jealousy" following a May 1969 hospital peer evaluation. In contrast to the 1970 Proficiency Report of Dr. Jones, the earlier peer "site visit report" described Dr. Gilbert as:

> a very creative, dynamic and aggressive individual, but, functioning alone, he has brought about piecemeal and slow progress ... Dr. Gilbert, apparently almost single-handedly, has performed the real selection of programs, enticement of investigators (which have been few) to the program, and monitoring of the varied projects. His efforts have seemingly provided the communications between investigators after the initial approach of cross-fertilization of ideas failed because of lack of attendance at research conferences.

*Gilbert v. Johnson*, 419 F.Supp. 859, 864 (N.D.Ga.1976). More importantly, the site report goes on to actually undermine Administrator Jones' negative analysis, that "by far the most important reason" for the inadequacy of the Atlanta VAH's research program was Dr. Gilbert's personality, by stating that:

> Institutional [*i.e.*, VA] scientific direction [for the Research Program] is lacking. Local facilities in Atlanta ... have been virtually neglected as possible sources of research collaboration or advice. A negative attitude toward research, prevailing in the past at the VAH and to some degree within some Emory clinical departments, has contributed to the small interest in research in the past of the faculty, staff or house staff of the VAH....

*Id.*

Whatever the degree of institutional jealousy existing at Atlanta VAH relative to Dr. Gilbert, we are bound by the finding of the District Court in *Gilbert v. Johnson*,

---

**11.** *Id.* at 459.

**12.** *Id.* at 460.

*supra*, that plaintiff's subsequent removal as ACOS in April 1970 was not taken in bad faith. *See Gilbert v. Johnson*, 419 F.Supp. at 885. That removal, ordered by Dr. Jarman following the 1970 Proficiency Report, stripped Dr. Gilbert of his ACOS duties, but nonetheless retained him on the A-VAH staff in order that he might continue his research program. This change of status was confirmed by Dr. Jarman in a July 7, 1970 memorandum to plaintiff.[13]

Following the April 1970 decision to remove plaintiff as ACOS, he was then considered by his superiors for permanent transfer and reassignment away from Atlanta VAH. The proposed reassignment was suggested in a letter dated May 6, 1970, by Dr. Jarman in which he cited to an alleged breakdown of plaintiff's relationships with "almost everyone in this hospital and Emory." *Gilbert v. Johnson*, 419 F.Supp. at 865. On September 22, 1970, however, contrary to Dr. Jarman's original intentions, plaintiff was reassigned, without explanation, *within* Atlanta VAH to perform routine examinations of veterans in connection with claims for compensation and pension coverage.

Plaintiff refused the September 22, 1970 reassignment arguing that it was too unrelated to his career specialty and thus damaging to his professional reputation. As an alternative thereto, plaintiff sought, and was granted, leave without pay status to enroll in a cardiovascular surgery refresher course at Leeds, England. Plaintiff's leave without pay status lasted approximately from November 1970 to March 1971. Upon returning from Leeds, plaintiff was confronted with yet another attempt to remove him from Atlanta VAH. This time, as of March 1971, plaintiff was ordered to report to the VAH in De Moines, Iowa, in order to undergo training in general surgery. This transfer to Des Moines was to be effective on June 13, 1971.

Plaintiff also reacted negatively to this proposed transfer. In that regard, he protested repeatedly through letters dated June, July, and August 1971, that his transfer was illegal and contrary to applicable VA regulations. According to plaintiff, in order to be properly transferred, the applicable regulations required that he be afforded the opportunity for a "comprehensive review" of his service as ACOS, including an administrative hearing.[14] Thereafter, plaintiff refused to accept his transfer to the Des Moines VAH and as a consequence thereof was separated *in toto* from VA service by a personnel action dated July 30, 1971.[15] Belatedly, plaintiff was informed by letter dated September 1, 1971, that he had no right to a hearing or appeal given the circumstances of his transfer.[16]

Some eight months later, on April 4, 1972, plaintiff filed a petition in the United States District Court for the Northern District of Georgia challenging the VA's decision of July 30, 1971, separating him from his then position. He alleged that his separation was affected in violation of procedural rights guaranteed by 38 U.S.C. § 4110, his tenure rights at Emory University, and due process of law. In an order dated June 16, 1972, said district court found in plaintiff's favor, *i.e.*, that his removal from the position of ACOS and discharge was governed by 38 U.S.C. § 4110 pursuant to which a hearing was required. Plaintiff's separation, therefore, being without the required hearing, and in violation of the procedural requirements of § 4110, was reversed by the district court. Consequently, plaintiff was awarded appropriate back pay, and the VA was ordered to provide plaintiff with the statutorily required hearing. Plaintiff was also reinstated with the VA—

> with the right to receive, until the effective date of a decision by a Board convened by the Veterans Administration in accordance with this order, all the salary

---

**13.** Plaintiff's Cross-Motion for Summary Judgment, Exhibit 1 (PX ——).

**14.** PX 3.

**15.** PX 5 and PX 6.

**16.** PX 6.

and other rights and privileges pertaining to the classification and status he held prior to separation, *with the proviso that the defendants are not required, at this time, to permit plaintiff to actually perform the duties of Associate Chief of Staff at the Atlanta Veterans Administration Hospital;* .... [17]

Based on the district court's order of June 16, 1972, plaintiff was restored to the active duty roster of the Atlanta VAH retroactively effective July 1, 1972, approximately one year from the date he was initially separated. This action, as well as a future disciplinary board hearing, were ordered by a telegram from VA headquarters in Washington, D.C., dated August 16, 1972, which provided, *inter alia:*

> [T]ake *immediate* action to reemploy Dr. Gilbert to your roles as a physician chief grade Step 10 retroactive to 7–2–72. * * *  *Dr. Gilbert will not be assigned to perform the function of Associate Chief of Staff.* * * * [T]ake *immediate* action in accordance with the provisions of Chap 8 MP–5 Part II to afford Dr. Gilbert a board hearing ordered by the court.[18]

As reflected on the corresponding "Notification of Personnel Action" Form-4650, dated July 1, 1972, plaintiff was "Reemploy[ed]" effective "07–01–72," "Position Title and No.: Physician"; "Grade or Level: Chief"; "Step Rate: 10"; "Name and Location of Employing Office: Prof Svcs Chief of Staff." [19]

It is subsequent to this July 1, 1972 reinstatement that the already questionable, but yet "good faith," tenor of defendant's actions takes on a different color. Most inexcusable is that, despite the August 16, 1972 admonishment to Atlanta VAH to take *"immediate action ... to* afford Dr. Gilbert a board hearing ordered by the court [on June 16, 1972]," the VA waited some 14 months, to October 1973, to convene a disciplinary board hearing. Serious and mysterious gaps exist in the administrative record with regard to any explanation for this delay. While some preparation time was indeed necessary, we find it hard to justify the additional year's delay that it took the VA to afford him the semblance of due process the district court ruled was due. At this posture, it was then *over* two years since plaintiff's *initial wrongful* separation.

Yet despite the apparent inability to find the time to convene an internal disciplinary proceeding as ordered, the VA was, however, somehow able to find the time to make a significant effort, over the 14-month hiatus, to assign, attempt a transfer, and reassign Dr. Gilbert to a plethora of alternative positions—all allegedly consistent, says defendant, with the district court's criteria of reinstatement to the "same classification and status" as ACOS.

The first attempted reassignment (on August 28, 1972) pursuant to the 1972 reinstatement order, and prior to the October 1974 disciplinary board proceeding, was for plaintiff to once again conduct examinations of veterans in connection with claims for compensation and pension coverage. Like before (*i.e.,* September 1970), plaintiff refused to accept the assignment arguing that it was, in effect, a reduction in rank from the ACOS position, or an adverse personnel action, taken without a hearing, and therefore in violation of the district court's June 16, 1972 order and 38 U.S.C. § 4110.

Next, on December 5, 1972, in an attempt to reach an amicable settlement of the entire matter, plaintiff was requested to accept a transfer to either the Little Rock, Arkansas VAH or the Birmingham, Alabama VAH. These proposed assignments do not appear to have been official reassignments, but simply offers by the VA to secure plaintiff's cooperation in accepting

---

17. AR at 95–96 (emphasis added). This order was later clarified by both the District Court and the Fifth Circuit Court of Appeals to have *not,* in effect, reinstated plaintiff as ACOS. *See Gilbert v. Johnson,* 419 F.Supp. at 865; *Gilbert v. Johnson,* 601 F.2d 761, 764 (5th Cir.1979).

18. AR at 88–89 (emphasis added).

19. *Id.* at 90.

their decision that it was best that he leave Atlanta VAH. Plaintiff was given until December 15, 1972 to respond.[20] Dr. Gilbert rejected both assignments because the VA allegedly had not complied with the court's June 16, 1972 order and for added reasons as stated by Dr. Gilbert's counsel:

> In the posture in which he found himself, the acceptance of this type of negotiated settlement would be tantamount to an admission on his part that his removal as Associate Chief of Staff, and his ultimate discharge were justified. The refusal to accept the Little Rock negotiated settlement was not unreasonable in light of Dr. Gilbert's knowledge that Drs. Jones and Jarman had endeavored to smear his professional reputation with negative references, including the allegation that he was "mentally ill" and "homicidal." Dr. Gilbert believed, and would so testify, that the only way to repair his reputation and reclaim his professional prestige was by ... reinstatement ... Letter Brief filed February 9, 1976, p. 16.

*Gilbert v. Johnson*, 419 F.Supp. at 866. By not complying with the court's June 16, 1972 order, it was meant that already six months had passed since the court's order and no VA disciplinary board hearing had been held, nor had the VA paid Dr. Gilbert the back pay he was wrongfully deprived of due to the initial defective separation some 17 months earlier. Relative to the "smear" by Drs. Jones and Jarman, the reference is to a recorded telephone conversation between a Dr. Dee and Dr. Jarman corroborated thereafter by the testimony of Dr. Jones before the disciplinary board on October 31, 1973.[21]

Finally, after having rejected the VA's foregoing compromise proposals, on February 6, 1973, once again and prior to receiving his legally entitled disciplinary board hearing, plaintiff was ordered to report for duty in the surgical out-patient clinic of the Atlanta VAH, effective 8:00 a.m., Monday, February 12, 1973. This is the position plaintiff was found by the 1981 Professional Standards Board to have abandoned. We note at this posture, however, that despite the apparent ease of the board in reaching its conclusion of abandonment (*see infra*), the circumstances surrounding this assignment apparently raise a number of alleged unanswered questions.

First, there is plaintiff's assertion that at the time of the 1981 board hearing he had never been officially informed of any change of status from the position of ACOS. This would, of course, include the 1973 surgical services assignment alleged to have been improperly affected by the defendant. The basis of this assertion by the plaintiff lies in the fact that the only notice alleged to have been received by plaintiff relative to this assignment was a telegram from Atlanta VAH. Plaintiff contends that the official "Notification of Personnel Action" form, allegedly required by regulation, was never received by him, and did not come to his attention until sometime in early 1975 during discovery before the district court in *Gilbert v. Johnson, supra.*

Second, there is the issue whether the 1973 assignment was legally consistent

---

**20.** PX 7.

**21.** PX 4(a) and PX 4(b). We note here that while neither of these precise documents were before the 1981 Professional Standards Board, the excerpted portion of the District Court opinion, making reference to them, was. In any event, it is well settled that in administrative review cases of this type, "in considering the issues of arbitrariness and lack of substantial evidence, we are entitled to review *all available evidence,* including de novo evidence taken before ... [this court], as well as the administrative record" (emphasis added). *Schlegel v. United States,* 189 Ct.Cl. 30, 416 F.2d 1372, 1375 (1969). *Ricci v. United States,* 205 Ct.Cl. 687, 507 F.2d 1390 (1974); *Beckham v. United States,* 179 Ct.Cl. 539, 375 F.2d 782, 785, *cert. denied,* 389 U.S. 1011, 88 S.Ct. 583, 19 L.Ed.2d 613 (1967).

In addition, irrespective of the administrative review question, because we proceed no further than a jurisdictional analysis herein, our power to find sufficient facts therefore, from any source presented, has been repeatedly acknowledged by this court. *See LaMear v. United States,* 9 Cl.Ct. 562, 568 n. 6 (1986); *Wall Industries, Inc. v. United States,* 10 Cl.Ct. 82, 86 n. 5 (1986).

with the 1972 district court order reinstating Dr. Gilbert. This issue was duly raised by Dr. Gilbert in a proceeding to enforce the 1972 order, but has never been officially resolved. Notwithstanding the foregoing, plaintiff did in fact receive the February 6, 1973 telegram advising him of the surgical services appointment, following which plaintiff's counsel wrote to the VA (on February 9, 1973) advising them that the 1973 assignment represented "a positive, overt and contumacious contempt for the judgment of the Court entered upon June 16, 1972." [22] The VA did not reply thereto. Thereafter, Dr. Gilbert petitioned the Northern District of Georgia to enforce the June 16, 1972 order. While the district court denied the motion to enforce its judgment, the plaintiff appealed, and the Fifth Circuit reversed the district court. In so doing, the Fifth Circuit held:

> The stated position of the Veterans Administration is unsatisfactory as to why it has failed to pay the money judgment rendered against it in June 1972, failed to immediately hold a hearing, withheld Dr. Gilbert's salary, and why it has made numerous attempts to order Dr. Gilbert to confine his professional activities to menial tasks totally unrelated to his highly specialized field of cardio-thoracic surgery. On their face they appear to be in violation of the district court's June 16, 1972 order.
>
> We, therefore, require that the district court re-examine the question of failure to satisfy its order and judgment of June 16, 1972 and to apply appropriate sanctions for failure to obey the court's order.
>
> The denial of plaintiff's motion by the district court was, therefore, erroneous and it is necessary that we remand this matter for further proceedings with directions that the court:
>
> 1. hold a hearing on plaintiff's motion forthwith and see to it that the order and judgment of June 16, 1972 are fully complied with;

> 2. require payment of the money judgment in full with interest, without deduction for retirement or income taxes;
>
> 3. *inquire into Dr. Gilbert's reinstatement and the reason why he allegedly has been given menial tasks not commensurate with his specialty, despite the court's order to reinstate him to "all the salary and other rights and privileges pertaining to the classification and status he held prior to separation";* ....

*Gilbert v. Johnson,* 490 F.2d 827, 829–30 (5th Cir.1974) (emphasis added, footnotes omitted). Whatever the precise impact of the Court of Appeals' holding relative to the efficacy of the 1973 assignment, and the district court *never* ruled on this issue, the evidence *is* clear that plaintiff refused to accept the challenged 1973 surgical services position. He did not report for work threat on February 12, 1973 as ordered, or at anytime thereafter, and his personnel records reflect that he had been continuously carried as AWOL from that specific position until his separation in 1981, a period approximating eight years.

Some five months after February 12, 1973, now three years since Dr. Gilbert was initially removed as ACOS, and over a year since the district court's order (June 12, 1972) reinstating him, the VA presented Dr. Gilbert with a letter of charges on July 25, 1973 formally seeking his removal from the position of ACOS. That letter contained, as grounds, 22 individually numbered charges. In sum, the charges reflected the VA's belief that Dr. Gilbert had failed "to effectively conduct and administer the research program of Veterans Administration Hospital, because of personality problems and personality misunderstandings. ..." *Gilbert v. Johnson,* 419 F.Supp. at 866. As examples of individual charges, various incidents were referenced, whereby Dr. Gilbert was charged with, *inter alia:*

> "angrily yelling" (XVII); making "derogatory comments" (XVIII); assuming "a

**22.** AR at 81–83.

superior air" (XIX); starting to scream, shout and furiously wave [his] arms (XI); being "rude, discourteous and unprofessional" (IV); exhibiting "anger and hostile behavior"; launching "into a long tirade" (XXII) and (VI) or launching a "diatribe" (XXI).

*Gilbert v. Johnson*, 419 F.Supp. at 867.

Following said letter of charges, on October 15, 1973, the plaintiff's court-ordered hearing was commenced before the VA's disciplinary board. The hearing before the board lasted some two months until December 12, 1973. Numerous witnesses were called resulting in a 4,000 page transcript, including several exhibits. The recommendations of the disciplinary board were released some seven months later, on July 17, 1974. In favor of plaintiff was the board's conclusion that all 22 charges had been effectively rebutted. Notwithstanding, the board was nevertheless able to find sufficient residual "ineptitude" on Dr. Gilbert's part, and sufficient irreparable damage to Dr. Gilbert's standing at Atlanta VAH, that it nonetheless felt compelled to recommend "minimal disciplinary action" against Dr. Gilbert. In concrete terms, the board felt that this decision would be best implemented by a transfer of Dr. Gilbert to another VA facility. That recommendation to transfer Dr. Gilbert was subsequently approved by the Chief Medical Director of Atlanta VAH, Dr. John Chase, on July 8, 1974.

Following Dr. Chase's approval of the disciplinary board recommendation on July 8, 1974, the VA wasted little time in searching for an alternative place of work for Dr. Gilbert. The record contains several documents attesting to the VA's initial efforts in this regard. First, there is a memorandum dated July 31, 1974, from Dr. Chase to the Assistant Administrator for VA Personnel. That memo requests the Assistant Administrator's "technical assistance ... to effect the ... transfer of Dr. Gilbert from his current assignment at Atlanta, Ga. to

another VA hospital within the system."[23] In addition, Dr. Chase writes:

> I have asked Dr. Lyndon E. Lee, ... for Professional Services to coordinate this activity with your office, and in the form of this memorandum, copy of which will be sent to Dr. Lee, *I am asking him to identify a VA hospital which can provide Dr. Gilbert with an opportunity to practice his surgical specialty at a level of his current competency and with the supervision and training necessary to return him to full competency in his chosen field.*[24]

Thereafter, a teletype dated September 24, 1974, confirms that a staff physician or a cardiovascular research position at the Birmingham VAH was available for Dr. Gilbert.[25]

Notice of the foregoing was then given to Dr. Gilbert by a letter from Dr. Chase dated October 30, 1974.[26] That letter confirms Dr. Chase's decision to provide for Dr. Gilbert a position at the Birmingham VAH. Through this median, Dr. Chase's language makes clear the firm nature of Dr. Gilbert's assignment to Birmingham VAH, as well as the consequences should he decline to accept. The text of this letter is as follows:

> This is to notify you of your transfer from the Veterans Administration Hospital (Atlanta), Decatur, Georgia, to the VA Hospital, Birmingham, Alabama, for assignment in Cardiovascular Research under Dr. E.E. Eddleman in your present grade and salary. *The transfer,* at Government expense, *will be effective on a date mutually agreeable to both hospitals.*

> Your transfer is under the provisions of VA Manual MP-5, Part II, DM & S Supplement, Chapter 9, paragraph 9.11. Under these provisions, refusal to accept a transfer determined necessary to meet the needs of the medical program and in

---

**23.** PX 15.

**24.** *Id.*

**25.** PX 16.

**26.** AR at 71–72.

the best interests of the service may result in separation.

*Officials of the Birmingham and Atlanta VA Hospitals,* as appropriate, *will contact you concerning the effective date* and other matters related to the transfer.[27]

Thus, as of October 30, 1974, from Dr. Gilbert's perspective, his transfer was complete, pending only the VA's communication to him of the effective or starting date.

At the same time the VA was finalizing and/or implementing Dr. Gilbert's transfer to the Birmingham VAH, Dr. Gilbert was pursuing an administrative appeal from the disciplinary board's decision, *supra,* recommending minimal disciplinary action. In addition, by letters dated November 1 and 4, 1974, Dr. Gilbert sought a stay of his transfer to Birmingham pending administrative appeal and any subsequent judicial review thereof. While no correspondence initiating any such appeal to the VA Administrator is contained in the record, the existence of plaintiff's appeal is confirmed by a letter from the VA to plaintiff's counsel dated October 30, 1974.[28] As of that date, the VA informed plaintiff's counsel that "[a]fter a thorough review of all the facts, the Administrator will advise you of his decision." [29] The VA Administrator denied plaintiff's appeal on March 17, 1975, and similarly denied plaintiff's subsequent motion for reconsideration on May 2, 1975.

Several days later, plaintiff once again found himself before the U.S. District Court for the Northern District of Georgia. On May 5, 1975, a hearing was commenced to respond to the Fifth Circuit's March 6, 1974 remand in *Gilbert v. Johnson,* 490 F.2d at 827 (discussed *supra*). Pursuant to the remand order, the district court considered essentially two issues: (1) "why the Government has refused or has not paid what the judgment of the Court was [Judgment of June 16, 1972] . . ."; and (2) "why he [Dr. Gilbert] allegedly has been given menial tasks not commensurate with his

speciality, despite the Court's order to reinstate him to all salary and other rights and privileges pertaining to the classification and status he held prior to separation [from ACOS]." *Gilbert v. Johnson,* No. 16,424, N.D.Ga., Transcript of Proceedings, May 5–7, 1975, at 302–03. Beyond the foregoing, the plaintiff also raised numerous substantive and procedural issues relative to alleged defects in the 1973 VA disciplinary board proceeding. In sum, this hearing before the district court combined *both* the Fifth Circuit remand in 490 F.2d at 827, and the initiation of judicial review of the 1973 VA disciplinary board proceeding.

In contrast to the unified approach of the May 5–7, 1975 hearing, the district court, upon a subsequent hearing dated November 13, 1975, decided to bifurcate its review of those issues then before it. At that latter November hearing, it was decided that all issues raised relative to an administrative review of the 1973 disciplinary board proceeding would be determined first, with all other issues, including those on remand from the Fifth Circuit, to be addressed by a subsequent opinion. Plaintiff's challenges to the procedures of the 1973 disciplinary board proceeding were exhaustively outlined in an 80-page pretrial order filed with the district court on May 16, 1975. Those challenges, primarily alleging a denial of due process, were addressed seriatim by the district court which thereafter dismissed plaintiff's claim in an equally exhaustive opinion dated July 1, 1976. *See Gilbert v. Johnson,* 419 F.Supp. at 859. In sum, the district court found "that a substantial and rational evidentiary basis exit[ed] for the VA's decision in this case and that Doctor Gilbert was afforded all the procedural due process protections to which he was entitled." *Id.* at 885.

At the end of the district court's opinion, there also appeared the following paragraph, undoubtedly directed at eliciting the parties' positions on how to proceed relative to the remaining issues previously bi-

---

**27.** *Id.* at 71 (emphasis added).

**28.** PX 17.

**29.** *Id.*

512

furcated from the administrative review at the November 13, 1975 hearing:

> [I]t now appears to the Court that there remain no further issues to be decided by this Court. Therefore, the court will consider this Order to be a final judgment in favor of the defendants, unless the parties inform the Court within ten (10) days as to what further proceedings may be required in this matter.

*Id.* The plaintiff responded by detailing the three questions then still unresolved following the earlier remand in *Gilbert v. Johnson,* 490 F.2d at 827, *i.e.:* (1) the amount of back pay owed to plaintiff (pursuant to the original district court order of June 16, 1972); (2) the propriety of transferring the plaintiff to another VAH; and (3) a determination of the plaintiff's then existing status at Atlanta VAH. *Gilbert v. Johnson,* 419 F.Supp. at 885–86.

In a supplemental opinion filed September 20, 1976, the court found plaintiff entitled to full pay up to the date the VA Administrator sustained the disciplinary board's decision, *i.e.,* March 17, 1975. Next, the court overruled plaintiff's objections to his proposed transfer as not "in accordance with the terms of the Board's decision and the prevailing authority on this subject." *Id.* at 886. Lastly, with respect to the plaintiff's *then* status at Atlanta VAH *following* the 1973 disciplinary board hearing, the court stated:

> Presumably the VAH will act consistently with the *Board's decision and the law.* The question of Doctor Gilbert's present status at the VAH *is not* properly before the Court at this time, but rather, *it would be more appropriately raised as a separate civil action.*

*Id.* (emphasis added). Thus, as far as the district court was concerned, it was best *not* to decide what was undoubtedly a question directed at (1) the position "status and classification" of plaintiff premised on the June 16, 1972 order; and (2) the Court of Appeals remand relative to determining why Dr. Gilbert was currently assigned to perform various alleged "menial" tasks.

Following the foregoing, plaintiff appealed both the July 1 and the supplemental September 20, 1976 decisions of the district court to the Fifth Circuit Court of Appeals. As between plaintiff and defendant, relative to plaintiff's due process claims, the Court of Appeals found no error in the conduct of the district court in dismissing the plaintiff's petition. Similarly, the court of appeals found, as did the district court, with regard to the transfer to Birmingham, that "no point can be made that the transfer was not authorized under [38 U.S.C.] § 4110(d)." *Gilbert v. Johnson,* 601 F.2d 761, 766 (5th Cir.1979). Despite, however, plaintiff having specifically raised the issue of his present status in his notice of appeal to the Fifth Circuit, the court in 601 F.2d at 761 does not address the district court's decision to dismiss the issue of plaintiff's status as "not properly before the Court at this time, but rather, ... more appropriately ... [the subject of] a separate civil action." *Gilbert v. Johnson,* 419 F.Supp. at 886. In view thereof, and as a last resort, plaintiff filed a petition for certiorari with the U.S. Supreme Court which was denied on April 14, 1980. *Gilbert v. Johnson,* 601 F.2d at 761, *cert. denied sub nom, Gilbert v. Cleland,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

It is interesting to note that despite the intense legal battle over the propriety of plaintiff's proposed transfer to Birmingham, throughout the entire period of litigation, from 1974 through to 1980 when certiorari was denied, neither the VA nor plaintiff did anything to effect that transfer. Moreover, nor did the VA see to it that Dr. Gilbert, technically a VA employee, was performing any services for the VA consonant with his 1973 assignment to outpatient surgical services. The record is suggestive of various explanations. First, there is the surprising reply of defendant's counsel at oral argument that, despite the obvious significance of this approximately six-year gap in VA activity, he did not know why action was never taken to effect plaintiff's transfer to Birmingham. Our review of the record discloses two equally possible, albeit circumstantial, perspectives.

The first of these is that it appears from at least two places in the district court record that plaintiff sought, administratively, to stay his transfer to Birmingham pending the outcome of planned judicial and administrative review of the disciplinary board proceeding.[30] We refer to this as only circumstantially probative because the record fails to disclose any affirmative representation by the VA that it would, in fact, comply with the plaintiff's request. The second explanation also suggested from the district court record is far more consistent with plaintiff's previous pattern of responding to work assignments from the VA: He refused to *accept* the transfer. In support, we quote from a letter brief filed by plaintiff's counsel in the district court:

> Obviously, the tasks and the status which Dr. Gilbert was to be assigned ... [at Birmingham] could only be considered as menial when compared to the responsibilities he held at the Atlanta V.A. Hospital, and certainly constituted the worst kind of professional denigration. Moreover, this assignment to the Birmingham V.A. Hospital went well beyond the "minimal disciplinary action" recommended by the Board....
>
> \*   \*   \*   \*   \*   \*
>
> *Thus, Dr. Gilbert rightfully refused it* [the transfer to Birmingham] *and such a refusal cannot be used as a basis for discharge.* Otherwise, "due process of law" is meaningless.[31]

This statement, written in the past tense, that "Dr. Gilbert rightfully *refused* it," taken in conjunction with Dr. Gilbert's indisputable failure to inquire relative to the status of that transfer for a six-year period, we find *prima facie* probative of the fact that Dr. Gilbert had no intention of ever going to Birmingham and also rejected this position as well. Lastly, it is also worth noting that in any event these two explanations are not inconsistent, and could have, at different times, or even simultaneously, explained the rationale behind the failure of the VA to implement the transfer, and the failure of Dr. Gilbert to perform any services for the VA from 1973 to 1981.

The record before this court is also helpful in understanding the 1973–1981 gap in employment activity relative to Dr. Gilbert's status *at Atlanta VAH*. For example, there are several letters contained in the administrative record between Dr. Gilbert and the VA which are similarly probative of our previous observation that Dr. Gilbert had no intentions of accepting the transfer to Birmingham, and that he had, in fact, manifested his unequivocal rejection of any and all VA assignments, except for his original position of ACOS at A–VAH. First, going back to December 2, 1975, there is a letter from VA personnel services to Dr. Gilbert which, while couched in terms of a notice for increased employee compensation or "special pay," does unequivocally inform Dr. Gilbert that he is considered to be AWOL from VA service.[32] Dr. Gilbert responded to the special pay notice by returning the forms to secure his eligibility therefor, but *did not* contest the VA's characterization of his status as AWOL, or more precisely, as *his* having refused to report for his assigned duty.

Second, the record contains a series of letters sent to Dr. Gilbert over the period November-December, 1974, attempting to establish contact and forwarding various VA personnel status documents.[33] Those letters, addressed to Dr. Gilbert's last known address, were mailed certified, return receipt requested, and were returned to the VA as unclaimed. Attempts were thereafter made to reach Dr. Gilbert, in

---

**30.** *See* District Court Record in C.A. No. 16424, Section #2 at 1070; *Gilbert v. Johnson*, U.S.D.C. N.D.Ga., Transcript of Proceedings, May 5–7, 1975, at 234–35.

**31.** District Court Record in C.A. No. 16424, Section #3 at 1206 (emphasis added).

**32.** AR at 63.

**33.** *Id.* at 67–70.

January 1975, through his counsel at the time, Sam F. Lowe. Mr. Lowe refused to accept the letters on behalf of Dr. Gilbert, or to even forward them to Dr. Gilbert. While Dr. Gilbert explains that he was allegedly away at the time visiting a sick friend, the fact that he did not even attempt to advise the VA of this prolonged sojourn is a further circumstance to support his intentional disregard for his well known responsibility to the Atlanta VAH.

Subsequent to plaintiff's receipt of notice of special pay eligibility in December 1975, *supra*, there appears to be a complete and continuous five-year gap in communication between plaintiff and the VA through to the next attempt by the VA to contact Dr. Gilbert by letter dated January 30, 1981. This five-year hiatus is itself probative of the lack of interest by Dr. Gilbert in pursuing VA employment in the form of *either* his 1973 surgical services assignment, or the proposed transfer to Birmingham. Likewise, it similarly speaks to the dilatory behavior of the VA in simply avoiding the Gilbert situation, even to the extent of failing to comply with the transfer order signed by Dr. Chase, the VA Chief Medical Director.

The letter of January 30, 1981, which reestablished contact with Dr. Gilbert, did so for the sole purpose of informing him that because the VA had not heard from him "subsequent to the April 1980 decision of the U.S. Supreme Court" denying certiorari in *Gilbert v. Johnson*, he was "therefore considered to have abandoned" his position.[34] That letter continued:

> You are hereby advised to contact this office either in writing or by telephone (202–389–2765 or 2766) no later than February 16, 1981 to indicate your employment intentions and to submit reasons why your separation for abandonment of position should not be effected. If you do not contact this office by the date specified, administrative action will be taken to separate you.
>
> *  *  *  *  *  *
>
> Your present employment status is absence without leave (AWOL) from the VA Medical Center in Atlanta. You were retained in that facility's employment during the process of your litigation.[35]

The VA's tolerance of Dr. Gilbert's extraordinarily long period of refusing, challenging and ignoring all previous VA reassignments was apparently coming to an end.

As if the writing on the wall were not clear enough as to what would happen were plaintiff to continue his refusal to obey VA orders, plaintiff in two reply letters incredulously refuses to accept the VA ultimatum and rebukes the VA Regional Director. Plaintiff writes in his first reply dated February 11, 1981:

> This is to acknowledge your letter bearing date stamp of January 30, 1981. Reference to your records will confirm that I have received no notice, assignment, or other manner of communication from the Veterans Administration, hence no indication as to whatever status might be conceived as mine. Neither have I been absent-without-leave.
>
> In response to your query: *I do herewith request that I be returned to the position of Associate Chief of Staff for Research, V.A. Medical Center, Atlanta.*[36]

Again, in a second more elaborate reply dated February 14, 1981, plaintiff refuses to acknowledge even the validity of any of his previous assignments and continues, without hesitation, to assert his right to the one position from which he *was* definitively removed, that of ACOS:

> I have never abandoned my position with the Veterans Administration as Assistant [sic] Chief of Staff in charge of research at the VA Hospital, Atlanta, Georgia. Indeed, since I was reinstated to this position by Judge Moye in June of 1972, I have never been officially advised

---

34. *Id.* at 142.

35. *Id.*

36. *Id.* at 219 (emphasis added).

of any change of assignment from Assistant [sic] Chief of Staff of Research, VA Hospital, Atlanta, Georgia. Likewise, I have never been advised in writing, as required by appropriate VA Regulations, that I have been put in Absent Without Leave status for failure to report to duty.

> *Thus, it is my position, and I hereby request, that I be notified when I should report for duty as Assistant [sic] Chief of Staff of Research at the VA Hospital, Atlanta, Georgia.*[37]

Not surprisingly, the VA did not take comfort in the substance of the assertions contained in Dr. Gilbert's two letters of reply. On March 3, 1981, the VA replied. As could have been foreseen given the content of Dr. Gilbert's reply letters, the VA did not find in them "sufficient justification" for Dr. Gilbert's "failure to advise" the VA of his location and "availability for work" prior to January 30, 1981.[38] The letter then traced plaintiff's employment history with the VA, from reinstatement by the District Court in 1972, to the 1973 surgical services assignment, and finally the removal as ACOS in 1974. The letter concluded:

> Your statement that you be returned to VMAC Atlanta as ACOS for Research thus *represents an unreasonable specified condition* on your *return to duty. You no longer occupy that position* and, therefore, have no right to condition your return to duty on assignment as ACOS for Research.[39]

Plaintiff was then advised that proceedings would be initiated to separate him from VA service for abandonment of position.

By letter dated March 16, 1981, plaintiff was notified that the VA Professional Standards Board would be meeting on March 23, 1981, to consider his separation for abandonment of the 1973 surgical services position. He was advised that he could appear before the board personally, or

through a written submission, to present his reasons for his absence. Unfortunately, the March 16, 1981 notice did not reach plaintiff until the day of the hearing, March 23, 1981. Whereupon, the VA rescheduled the hearing for May 4, 1981.

Plaintiff attended the May 4, 1981 hearing before the VA Professional Standards Board in person. At that hearing, Dr. Gilbert presented a statement in the form of a "Motion: That Veterans Administration Employee Joseph W. Gilbert, Jr. Be Afforded The Elements Of Due Process." No ruling on that motion is recorded by the board, which thereafter voted unanimously to separate Dr. Gilbert for abandonment of position. The specific findings of the board were as follows:

1. Dr. Gilbert was assigned to Surgical Service in 1973 after being re-employed pursuant to a Federal Court Order.

2. Dr. Gilbert was removed from his position as Associate Chief of Staff for Research pursuant to a fully Disciplinary Board proceeding. The VA decision in this regard has been upheld in Federal Court.

3. Dr. Gilbert has not reported for duty at VA Medical Center, Atlanta, GA., although ordered to do so in February, 1973, and he has been carried in an Absent Without Leave status.

4. Dr. Gilbert has maintained that he will return to duty in the position of Associate Chief of Staff for Research, the same position from which he was removed through the Disciplinary Board proceeding.

Based on its consideration of the evidence and its findings, the Board unanimously agreed to recommend that Dr. Gilbert be separated for abandonment of position.[40]

The decision of the board was approved by the Medical Center Director on May 5, 1981, and Dr. Gilbert was notified of this result by a "Notification of Personnel Ac-

---

37. *Id.* at 215–16 (emphasis added).

38. *Id.* at 173.

39. *Id.* (emphasis added).

40. *Id.* at 139.

tion" form enclosed with a letter dated May 20, 1981.

Thereafter, plaintiff attempted to seek review of the 1981 separation by once again applying to the U.S. District Court of the Northern District of Georgia. This time, however, the district court refused jurisdiction over plaintiff's claim and entered an order of transfer to this court dated February 2, 1983.

### III. *Contentions of the Parties*

Plaintiff seeks essentially two forms of relief: (1) back pay based on the VA's failure to effect his transfer to an appropriate position at the Birmingham VAH; and (2) reinstatement to VA service following his 1981 dismissal by a VA Professional Standards Board for abandonment of position. The focused substance of plaintiff's contentions centers around the question whether the 1981 Professional Standards Board decision was arbitrary, capricious, not supported by substantial evidence, and in complete contravention of the due process requirements of 38 U.S.C. § 4110. In resolving this controversy, however, we do not deem it necessary to address plaintiff's contentions relative to the alleged improprieties of the 1981 Board proceedings. This is so because, in view of the unique circumstances discussed *infra*, the 1981 separation does *not* give rise to the prerequisite monetary claim which is a jurisdictional requirement in this court pursuant to the Tucker Act. We are also limited in our consideration of plaintiff's claim for back pay relative to the proposed 1974 Birmingham transfer because of both jurisdictional and substantive deficiencies in that claim.

Defendant's motion for summary judgment raises some of the jurisdictional and substantive deficiencies on which we have chosen to rely in disposing of this case.

The defendant's precise contentions, however, do not directly address the plaintiff's two unique claims as we now perceive them. This is undoubtedly due in part to the fact that it was not until oral argument that plaintiff asserted that his back pay claim was based, *ab initio*, on the proposed 1974 transfer to Birmingham. In any event, defendant's motion stresses that this court "has no jurisdiction to consider any argument by plaintiff that his reassignment to the position of physician at the AVAH out-patient surgical clinic was improper."[41] Three theories are advanced.

First, defendant argues that any challenge to the 1973 reassignment is barred by the six-year statute of limitations contained in 28 U.S.C. § 2501. Second, defendant argues that the 1973 reassignment may not be challenged in this court because that reassignment does not give rise to a monetary claim. It did not decrease or diminish plaintiff's compensation or employee benefits in any way. Third, defendant argues that any claim plaintiff might have had that the 1973 reassignment was invalid is barred by the doctrine of *res judicata*. According to defendant, "[p]laintiff had the opportunity to attack the reassignment when he filed the civil action that resulted in the decisions in *Gilbert v. Johnson,*" *supra*.[42]

In its reply and cross-motion for summary judgment, plaintiff contests defendant's characterization of this action as one challenging the 1973 reassignment and thus barred by the statute of limitations.[43] Rather, plaintiff argues that, "[w]hile the 1973 reassignment was an issue which the Veterans Administration acted upon for the first time in its 1981 proceeding, the gist of plaintiff's claim is that the 1981 proceeding itself was improper and its findings arbi-

---

**41.** Defendant's Motion for Summary Judgment (DMSJ) at 3.

**42.** *Id.* at 4.

**43.** Plaintiff also attempts to overcome defendant's assertion of the statute of limitations contained in § 2501 on the grounds of waiver. Defendant failed to assert this deficiency any

time prior to its motion for summary judgment. We dismiss this argument summarily as without merit as it has long been held that the statute of limitations contained in § 2501 is jurisdictional in nature and cannot be waived. *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

trary and capricious." [44] Thus, concludes plaintiff, "the prosecution of this action falls well within the six year period of limitations established by 28 U.S.C. § 2501." [45]

Plaintiff also contests defendant's assertion that this cause of action is not one for money damages. In this connection, he avers that his monetary claim derives from the unjustifiable conduct of the VA in maintaining him on its employment rolls, yet failing to provide an "appropriate VA position" as proposed by the May 2, 1975 directive of the VA Administrator.[46] Thus, "[he] contends that he is due back pay for the entire period which he remained in th[is] unpaid and unassigned limbo status ... [*i.e.*, commencing in May 1975]." [47]

Relative to defendant's assertion that plaintiff's claim is barred by *res judicata*, plaintiff again counters that he is not "attempting to relitigate the purported 1973 assignment." [48] Moreover, it is plaintiff's position that he has always contested the efficacy of the 1973 assignment and, in so doing, that issue was decided in favor of the plaintiff in the Court of Appeals decision in 490 F.2d at 827. Therefore, concludes plaintiff, "the Court should find that it is the defendant who is precluded from relitigating the issue of the propriety or effectiveness of the 1973 surgical outpatient clinic assignment." [49]

The most potent objection defendant raises to plaintiff's recovery is applicable to the circumstances surrounding both the separation for allegedly abandoning the 1973 surgical services assignment, and the proposed 1974 transfer to Birmingham. It is defendant's position that plaintiff is precluded from recovering back pay under *either* theory because during the period for which Dr. Gilbert seeks back pay he was neither ready nor willing to perform any of the duties to which he was then assigned (including the proposed assignment to Birmingham). Defendant avers that the condition that an employee be ready and willing to work, during the period for which he seeks back pay, is not fulfilled in this case because plaintiff has refused to perform any position with the VA *except ACOS*, a position he has had no right to since the initial court order in 1972. In support of the foregoing, defendant relies on *Manzi v. United States*, 198 Ct.Cl. 489 (1972); *Kanarek v. United States*, 184 Ct.Cl. 125, 394 F.2d 525 (1968); *Walker v. United States*, 179 Ct.Cl. 723, *cert. denied*, 389 U.S. 1036, 88 S.Ct. 772, 19 L.Ed.2d 825 (1967).[50] Plaintiff, of course, denies the defendant's allegations and asserts that he was always ready and willing to perform any "assignment consistent with either a court or Disciplinary Board order." [51]

## IV. *Discussion*

### A. *Introduction*

As heretofore noted under the parties' contentions *supra*, we perceive plaintiff's petition to present essentially two basic requests for relief: (1) back pay based on the VA's failure to affect plaintiff's transfer to an appropriate position at the Birmingham VAH; and (2) reinstatement to VA service because of plaintiff's 1981 dismissal, improperly, by a VA Professional Standards Board for abandonment of position. The parties' arguments are somewhat obscure as to the proper resolution of these claims; however, we believe that our analysis of the applicable precedent appropriately resolves the definitive issues.

**44.** Plaintiff's Cross-Motion for Summary Judgment (PXMSJ) at 5.

**45.** *Id.*

**46.** *Id.* at 7.

**47.** *Id.*

**48.** *Id.*

**49.** *Id.* at 10.

**50.** Defendant also asserts that as a general proposition plaintiff's claim for back pay is barred because plaintiff has failed to mitigate his damages by pursuing alternative employment. We need not reach this alternative argument, however, as grounds discussed *infra* are clearly sufficient to dispose of this case.

**51.** Plaintiff's Reply Brief at 8.

First, relative to the back pay claim based on the proposed 1974 transfer to Birmingham, plaintiff is precluded from recovering for two apparent reasons: (1) he was never duly appointed to any position at the Birmingham VA; and (2) in any event, assuming *arguendo* he was so appointed, he has *not* carried his burden of showing that he was ready and willing to accept and perform the duties of said position. Second, relative to the reinstatement claim based on the 1981 Professional Standards Board proceeding, this court is without jurisdiction to review said proceeding because there is no actionable monetary claim arising out of the 1981 separation within the meaning of the Tucker Act. This court can only order reinstatement "to afford complete relief" where jurisdiction is first predicated on a monetary claim arising out of the wrongful personnel action itself. In this case, no monetary claim arises from the 1981 separation because plaintiff was neither ready nor willing to perform the 1973 surgical services position at any point in time before 1981 nor since that date. We discuss each claim for relief seriatim.

### B. *Back Pay Re The 1974 Transfer to Birmingham*

██ In order for this court to entertain a plaintiff's claim, that claim must, at least in part, include a viable claim for monetary damages presently due from the United States. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also*, 28 U.S.C. § 1491 (1982). In civilian pay cases, for employees like the plaintiff not covered by the Civil Service Reform Act (CSRA), the right to money damages for jurisdictional purposes must be based on an unwarranted personnel action which resulted in the withdrawal or reduction of all or part of the pay to which the plaintiff was then entitled. *King*, 395 U.S. at 2–3, 89 S.Ct. at 1501–02; *Fausto v. United States*, 791 F.2d 1554, 1556 (CA Fed.Cir. 1986); Back Pay Act, 5 U.S.C. § 5596 (1982). By then entitled, we mean: (a) that the plaintiff was then duly appointed to the position for which he seeks back pay, *Testan*, 424 U.S. at 402, 96 S.Ct. at 955; *United States v. McLean*, 95 U.S. 750, 24 L.Ed. 579 (1877); *Ganse v. United States*, 180 Ct.Cl. 183, 376 F.2d 900, 902 (1967); *Price v. United States*, 112 Ct.Cl. 198, 80 F.Supp. 542 (1948); and (b) that he was ready, willing and able to perform the position from which he was separated, over the period during which he seeks back pay. *Corrigan v. United States*, 153 Ct.Cl. 392 (1961); *Everett v. United States*, 169 Ct.Cl. 11, 340 F.2d 352 (1965); *Lech v. United States*, 187 Ct.Cl. 471, 409 F.2d 252 (1969); *Minskoff v. United States*, 229 Ct.Cl. 499 (1981); *Cunningham v. United States*, 212 Ct.Cl. 451, 549 F.2d 753 (1977).

██ In the case at bar, there is no dispute that Dr. Gilbert has not been paid since his separation in 1981. In fact, he was last paid for a period ending in 1975. Similarly, there is no doubt that he was an employee of the VA continuously (notwithstanding the 1970 illegal separation) from 1966 to 1981. As is clear from our recognition of the applicable precedent, however, simply being on the VA rolls, without being paid, does not *ipso facto* create an entitlement to back pay. In addition to the criterion of being "duly appointed" *to the position in issue*, there is the added requirement of being "ready, willing and able," to perform the same. Our determination to deny the plaintiff's back pay claim relative to the proposed 1974 transfer, therefore, is based on his failure to carry the requisite burden with respect to the foregoing criteria.

At the close of the disciplinary board proceedings in December 1973, the board voted to recommend that minimal disciplinary action be taken against Dr. Gilbert. That minimal disciplinary action was translated into a proposed assignment to a VA hospital other than the Atlanta VAH. From the correspondence in the record, it is clear that a commitment to accept Dr. Gilbert was made by the Birmingham VAH sometime in September of 1974. Dr. Gilbert was notified that this commitment had been accepted by the Chief Medical Di-

rector on his behalf in late October 1974, and further, that the *effective* date of his transfer would be forthcoming. *In haec verba,* that letter notifying plaintiff of his proposed transfer stated:

> The transfer, at Government expense, *will be effective* on a date mutually agreeable to both hospitals. * * * Officials of the Birmingham and Atlanta VA Hospitals, as appropriate, will contact you concerning the effective date.... [52]

It is significant to observe that no other documentation appears in the record to establish either the effective date, or any other contingent arrangement whereby Dr. Gilbert was directed to report for duty at the Birmingham VAH.

In our judgment, use of the words—"the transfer ... will be effective"—unquestionably manifested the understanding that something remained to be done to *duly implement* said transfer. There remained a conditioned precedent to the effectiveness of that transfer, *i.e.,* a further act by the two VA hospitals fixing an "effective ... date" was required. It is at that date that plaintiff's duty to report and Birmingham's duty to pay would arise. This is evident by the last sentence in the above-quoted passage. On this record, therefore, we are constrained to hold that plaintiff was not duly appointed to *any* position at the Birmingham VAH. In such a circumstance, the consequences of the VA's failure to act are clear:

> If the executive officer failed to do his duty, he might have been constrained by a *mandamus.* But courts cannot perform executive duties, or treat them as performed when they have been neglected. They cannot enforce rights which are dependent for their existence upon a prior performance by an executive officer of certain duties he has failed to perform. The right asserted by the claimant rests upon a condition unfulfilled.

*McLean,* 95 U.S. at 753.

In this case, when no effective implementation date was forthcoming, plaintiff had the option to take action to enforce the transfer, or rest comfortably in his so-called "limbo" status. He chose the latter. As stated by the Supreme Court, we cannot ignore the lack of executive action in naming the referenced effective date, nor treat that event as having occurred when it did not. Therefore, inasmuch as plaintiff's back pay claim depends on his having been duly appointed to the Birmingham position, and he was not, that claim must be dismissed. *See also Testan,* 424 U.S. at 402, 96 S.Ct. at 955; *Ganse,* 376 F.2d at 902; *Price,* 112 Ct.Cl. at 200, 80 F.Supp. 542.[53]

In addition to the obvious fact that plaintiff was never duly appointed to the Birmingham position, there is also convincing evidence in the record to support the conclusion that he was neither ready nor willing to accept the Birmingham transfer had there been an established starting or effective date. Under such circumstances, it has been consistently held by our predecessor court that:

> [B]ack pay for improper dismissal should be denied where the employee was not ready, willing and able to resume his position during the period for which relief was sought. The purpose of that prerequisite ... is to insure that federal employees who are improperly dismissed will recover no more than the amount actually lost as a result of the separation. * * * If the employee was incapable of performing the work for which the pay was to be received, it follows that he has lost nothing which he would have earned but for the wrongful separation.

---

**52.** AR at 71 (emphasis added).

**53.** There is no doubt that plaintiff's numerous letters claiming an entitlement to be returned to VA service as ACOS do not, in any way, amount to a protest that the transfer to Birmingham was not effected. Moreover, even assuming *arguendo* that they did, we find no exception in the case law to support any basis to afford plaintiff affirmative relief thereon. In fact, given the well documented history of this case, it strains credulity to believe plaintiff would not have known how to make a more direct protest had he really desired the Birmingham transfer.

*Everett,* 169 Ct.Cl. at 15–16, 340 F.2d 352 (emphasis added; citations omitted). By parity of reasoning, given the facts surrounding the plaintiff's proposed transfer to Birmingham, we believe the teachings of the court in *Everett* are similarly dispositive of plaintiff's claim here. Not being ready or willing to accept the Birmingham transfer, plaintiff lost nothing he otherwise would have earned if the 1981 separation had not occurred.

At oral argument, and as an apparent afterthought, plaintiff contended that he was ready and willing to accept the proposed transfer to Birmingham. This is mere argument, however, unsupported by affidavit or any other probative documentary evidence in the record. In fact, the failure of plaintiff to carry *his* burden is manifested on the record by a number of circumstances highly probative of his apparent decision *not* to accept the proposed transfer to Birmingham. *Cf. Cunningham v. United States, supra* 549 F.2d at 760.

What is clearly evident is the fact that from the date plaintiff was notified of the Birmingham transfer in 1974, to the date *certiorari* was denied in 1980 in the prior litigation, *supra,* plaintiff did nothing affirmative relative to causing the VA to implement the Birmingham transfer—nothing but expend tremendous energies to contest it. *See Gilbert v. Johnson, supra.* While plaintiff may have sought to stay said transfer pending the litigation mentioned *supra,* there is no evidence in the record to support a conclusion that the VA agreed to the stay, or otherwise suspended the disciplinary board recommendation. Thus, his failure to seek out and enforce the proposed transfer, in our judgment, is inconsistent with his claim that he was then ready and willing to accept the Birmingham position. Plaintiff's failure to act for such an extraordinary period of time, therefore, is *prima facie* proof thereof.

In addition, and equally probative of the foregoing, is a passage from the brief filed by Dr. Gilbert with the Northern District

of Georgia shortly after he was notified of the proposed transfer. Plaintiff (through his counsel) writes:

> Obviously, the tasks and the status which Dr. Gilbert was to be assigned ... [at Birmingham] could only be considered as menial when compared to the responsibilities he held at the Atlanta V.A. Hospital, and certainly constitute the worst kind of professional denigration. Moreover, this assignment to the Birmingham V.A. Hospital went well beyond the "minimal disciplinary action" recommended by the Board.... * * * Thus, *Dr. Gilbert rightfully refused it* [*i.e.,* the transfer to Birmingham] and such a refusal cannot be used as a basis for discharge.[54]

Against this background, we, therefore, find plaintiff's assertion at oral argument, that he was ready and willing to go to Birmingham, to be specious. In substance, we reiterate that plaintiff has presented no creditable evidence to support a conclusion that he was ready or willing to accept the Birmingham transfer had an effective date been assigned. Moreover, as our discussion illustrates, the evidence is thoroughly probative of the opposite conclusion, and we so find. Thus, even had plaintiff been duly appointed to the Birmingham VAH, which he was not, he cannot recover back pay relative thereto inasmuch as he was neither ready nor willing to accept such an assignment at any time. In essence, to paraphrase the words of the *Everett* court, since Dr. Gilbert was neither ready nor willing to "perform[] the work for which the pay was to be received, it follows that he has lost nothing...." *Everett,* 169 Ct.Cl. at 16, 340 F.2d 352. On this basis, plaintiff's back pay claim relative to the transfer to Birmingham must be, and hereby is, dismissed.

C.  *Reinstatement and Reversal of the 1981 Professional Standards Board Proceeding*

█ The law governing the claim for reinstatement, plaintiff's second claim for

---

**54.**  District Court Record in C.A. No. 16424, Section # 3 at 1206 (emphasis added).

relief, is not very far removed from that addressed *supra* relative to plaintiff's entitlement to the benefits of the proposed 1974 transfer. As a basic proposition, this claim, requesting declaratory relief, is beyond the jurisdiction of this court unless a corresponding claim for monetary relief can be established. *King*, 395 U.S. at 1, 89 S.Ct. at 1501; *Testan*, 424 U.S. at 392, 96 S.Ct. at 948. Only in conjunction with the award of monetary relief, in an effort to fashion complete relief, may this court order and declare such a reinstatement, or even review the proceedings of an administrative board. Thus, our threshold inquiry must relate to the nature of any monetary award which could affirmatively flow from any review of the 1981 disciplinary board proceeding in which plaintiff was discharged for allegedly abandoning the 1973 assignment. For the following reasons, we decline any such review of the 1981 board proceeding because the plaintiff's separation was not an event which can reasonably be interpreted to form the basis of a claim for monetary relief (back pay) within our jurisdiction.

We dismiss any monetary claim relative to the 1981 separation for abandonment of position on one of the same grounds that defeated the monetary claim relative to the 1974 transfer, *i.e.*, that plaintiff was neither ready nor willing to perform the 1973 surgical services position from its effective date in 1973 to the date of plaintiff's separation for abandonment thereof in 1981 or at any time thereafter. Plaintiff's personnel records reflect that he was duly appointed to the position of physician, outpatient surgical clinic of the Atlanta VA effective 8:00 a.m., Monday, February 12, 1973. Plaintiff did not show up then, nor has he ever, in compliance with that assignment. Immediately after receiving notice of the assignment, plaintiff, through his counsel, demanded that the assignment be withdrawn, arguing that it was illegal and in contravention of the district court's June 16, 1972 order. Thereafter, plaintiff again contested the assignment in the district court and up through the Fifth Circuit Court of Appeals. While neither court ever decided the issue of the propriety of the 1973 assignment, that does not alter the fact that plaintiff continuously refused to accept it. Moreover, we note that despite plaintiff's protestations here, the avenue to resolve the issue of the 1973 assignment was in the district court, before that case was officially closed, not here collaterally.

In all, plaintiff's continuous unauthorized absence from the surgical clinic position, and numerous protests, *supra*, make indisputably clear that he was neither ready nor willing to accept the 1973 surgical services assignment at any time. He is therefore also not entitled to back pay regarding said position. (*See* cases cited, *supra*.) On that finding, we are without power to review the administrative proceeding separating plaintiff for abandoning that position. *Corrigan*, 153 Ct.Cl. at 392; *Everett*, 169 Ct.Cl. at 11, 340 F.2d 352; *Minskoff*, 229 Ct.Cl. at 499. Without first demonstrating a willingness to have performed the assignment from which he was allegedly wrongfully discharged, plaintiff cannot be said to have lost any monetary benefits on which a claim in this court can rest. In simple terms, because of plaintiff's continuous unwillingness to accept said position from its inception in 1973, the 1981 separation therefrom did not strip plaintiff of an entitlement to any benefits which were then the obligation of the government to provide. Plaintiff's request for a review of the 1981 Professional Standards Board proceeding does not state a claim for which the United States can be said to have opened the doors of this court by way of waiver of sovereign immunity.[55] *Testan*, 424 U.S. at 392, 96 S.Ct. at 948; *King*, 395 U.S. at 1, 89 S.Ct. at 1501.

55. Lastly, we do not fail to address defendant's statute of limitations argument through oversight. While we are inclined to agree that the back pay claim presents a serious statute of limitations question, we do not express any holding on that issue inasmuch as the discussion above sufficiently disposes of plaintiff's claim irrespective of the statute of limitations.

### V. *Conclusion*

Despite our finding that plaintiff is not entitled to recover under any theory on these facts, a need for some limited comment regarding the conduct of the defendant, the VA, toward Dr. Gilbert is warranted. As our discussion of the facts discloses, defendant's treatment of plaintiff in discretionary situations, irrespective of plaintiff's own intransigence, undeniably is cause for concern and at best highly questionable. However, because this court is constrained by the doctrines of sovereign immunity and *stare decisis,* we must rule consistent with the foregoing discussion and as follows:

Defendant's motion for summary judgment, as determined *supra,* is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk shall dismiss the plaintiff's petition. No costs shall be awarded.

IT IS SO ORDERED.